IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

OLYMPIA STEEL BUILDING SYSTEMS CORP, et al.)
)
)
   Plaintiffs,      )
)
 -vs-         )
            Civil Action No. 06-1597
)
GENERAL STEEL DOMESTIC SALES, LLC d/b/a )
GENERAL STEEL CORPORATION, et al.,  )
)
)
   Defendants.     )

AMBROSE, Chief District Judge.

## OPINION and ORDER of COURT

### SYNOPSIS

Competitors in the steel frame building market have been involved in litigation in at least one other jurisdiction. Here, competitors allege that the others have defamed them and competed unfairly. They have asserted a variety of claims. The Defendant competitors seek the dismissal of the action or, in the alternative, the transfer of the case. They contend that this Court lacks personal jurisdiction over them and that, in the alternative, venue in this jurisdiction is neither proper nor convenient. After careful consideration, and because I find no basis upon which to exercise personal jurisdiction over the Defendants, the Motion to Dismiss is

1

granted.[1]

OPINION

Plaintiffs Olympia Steel Building Systems Corp. ("Olympia") and Universal Steel Buildings Corporation ("Universal") are Pennsylvania corporations, with their principal places of business located in McKees Rocks, Pennsylvania. Olympia is the registrant, owner, licensee and original user of the federally registered OLYMPIA STEEL BUILDINGS trademark. Universal sells pre-engineered, rigid steel frame buildings, building systems and products. Universal currently uses, and is the sole licensee of, the OLYMPIA STEEL BUILDINGS trademark.

Olympia and Universal compete in the steel building market with Defendant General Steel Domestic Sales, LLC ("General Steel"). General Steel is a Colorado limited liability company. Defendant Jeffrey Knight, a Colorado resident, is the sole member of General Steel. Olympia and Universal allege that Knight is the alter ego of General Steel and they seek to pierce the corporate veil in this regard. Defendant Anthem Steel is also a competitor in the steel building market. It is a Delaware limited liability company whose principal place of business is located in Colorado.[2]

Olympia and Universal contend that the Defendants have engaged in defamatory sales techniques, which disparaged Olympia during sales calls. They commenced this action in the Court of Common Pleas of Allegheny County,

---

[1] Because I find no jurisdiction exists, I decline to consider Defendants' other arguments in support of their Motion.

[2] Olympia and Universal initially also named Discount Steel Buildings, Lee Bashore, Andrew Tsakalakis and Steven Paige as Defendants, yet later filed a Notice of Dismissal Pursuant to Federal Rule of Civil Procedure 41(a) of all claims asserted against these Defendants. See Docket No. [41].

2

Pennsylvania.  They request and / or have asserted claims of: defamation; commercial disparagement; interference with prospective contractual relations; a permanent injunction; a preliminary injunction; "enterprise liability / piercing the corporate veil"; and unfair competition and false advertising under the Lanham Act, 15 U.S.C. § 1125(a).  The Defendants subsequently removed the action to this Court pursuant to 28 U.S.C. § 1331 and § 1332(a).

The Defendants then filed a Motion to Dismiss, Or, In the Alternative, To Transfer Venue.  See Docket No. [5].  The Defendants seek dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); for improper venue under Federal Rule of Civil Procedure 12(b)(3) and under 28 U.S.C. §1406(a); and under the doctrine of forum non conveniens.  In the alternative, the Defendants request a transfer of this action to the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a) and § 1406(a).  At Olympia's and Universal's request, the parties have engaged in discovery on jurisdictional matters and the Motion is now ripe for disposition.

ANALYSIS

The Complaint raises both a federal and state law claims.  The federal claim, asserted under the Lanham Act, does not provide for national service of process.  Accordingly, personal jurisdiction for all claims is determined under Pennsylvania's long-arm statute. See Rubin v. The City of New York, Civ. No. 6-6524, 2007 WL 950088 at * 1 (S.D. N.Y. March 29, 2007).  Pennsylvania's long-arm statute permits a district court sitting in Pennsylvania to exercise personal jurisdiction over non-resident

defendants "to the fullest extent allowed under the Constitution of the United States." See 42 Pa. Cons. Stat. Ann. § 5322(b).

The Third Circuit Court of Appeals has explained that:

> [t]he Due Process Clause of the Fourteenth Amendment guarantees in personam jurisdiction may only be asserted over a nonresident defendant corporation if that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (19450 (quotation omitted). In assessing personal jurisdiction, the court must resolve the question based on the circumstances the particular case presents. Burger King v. Rudzewicz, 471 U.S. 462, 485, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985).
> A court may exercise personal jurisdiction over a defendant if the defendant has specific or general contacts with the forum. Specific jurisdiction is appropriate only if the cause of action is related to or arises out of the defendant's forum-related activities, so that it should reasonably expect to be haled into court. Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 (3d Cir. 1996); Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S. Ct. 1868, 80 L.Ed.2d 404. The defendant must have "purposefully directed his activities at the residents of the forum" and the litigation must have resulted from the alleged injuries that "'arise out of or relate [] to those activities.'" BP Chem. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (quoting Burger King, 471 U.S. at 472, 105 S. Ct. 2174). This determination is both claim-specific and defendant-specific. See Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001); Rusk v. Savchuk, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed.2d 516 (1980).
> If the cause of action does not "arise out of" the defendant foreign corporation's activities, a court may assert general jurisdiction if the corporation has "continuous and systematic" contacts with the forum state. 466 U.S. at 414-15, 104 S. Ct. 1868. The standard for evaluating whether minimum contacts satisfy the test for

4

>general jurisdiction is more stringent than the test applied
>to questions of specific jurisdiction. See <u>Noonan v.
>Winston Co.</u>, 135 F.3d 85, 93 (1st Cir. 1998).

See <u>Saudi v. Acomarit Maritimes Services, S.A.</u>, 114 Fed. Appx. 449, 452-53 (3d Cir. 2004). Here, Olympia and Universal contend that both specific and general jurisdiction exist over the Defendants.[3] I will consider each allegation in turn.

A. Specific Jurisdiction

As previously stated, specific jurisdiction may be exercised where the plaintiff's claim arises out of the defendant's forum-related activities. See <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 100 S. Ct. 559 (1980). Because specific jurisdiction is predicated upon the particular claim, a court must conduct a claim-specific inquiry to determine whether it has personal jurisdiction over a defendant. See <u>Remick v. Manfredy</u>, 238 F.3d 248, 255 (3d Cir. 2001). Here, Olympia and Universal have set forth claims of defamation, commercial disparagement, tortious interference with prospective contractual relations and violations of the Lanham Act. The parties appear to agree that the "effects test" set forth in <u>Calder v. Jones</u>, 465 U.S. 783, 104 S. Ct. 1482 (1984) governs the claim specific inquiries for each of these claims. Thus, Olympia and Universal must show that:

>(1) the defendants committed an intentional tort;
>(2) they felt the brunt of the harm in the forum so that
>the forum can be said to be the focal point of the harm
>suffered by the plaintiff as a result of that tort; and

---

[3] The Plaintiffs argue that personal jurisdiction over Knight must exist if it exists with respect to General Steel, because Knight is General Steel's alter ego. I need not address Plaintiffs' contentions in this regard because I find that personal jurisdiction does not exist with respect to General Steel.

> (3) the defendants <u>expressly aimed</u> their tortious conduct at the forum so that the forum can be said to be the focal point of the tortious activity.

See <u>IMO Industries, Inc. v. Kiekert AG</u>, 155 F.3d 254, 265-66 (3d Cir. 1998) (footnote omitted).

After careful consideration, I find that the exercise of specific jurisdiction is not warranted because the Defendants did not <u>expressly aim</u> their allegedly tortious activity at Pennsylvania such that Pennsylvania can be said to be the focal point of the tortious conduct. The tortious conduct here consists of disparaging comments about Olympia and / or Universal. I have reviewed the voluminous exhibits submitted in support of the exercise of jurisdiction. In those exhibits, I found only two exchanges which contain allegedly defamatory comments about Olympia. One is from an exchange between "Shawn" (presumably a potential customer) and "Marly" from General Steel. <u>See</u> Docket No. [44], p. 171-175. Nothing in that exchange suggests that Shawn was from Pennsylvania or that the comments were somehow connected with a building to be constructed in Pennsylvania. During another exchange between "Dan Hess" of General Steel and "Jason Tetter," (again, presumably a potential customer) while there are references to Olympia, there is no suggestion that Jason Tetter was a Pennsylvania resident or that the comments were somehow otherwise connected to Pennsylvania. <u>See</u> Docket No. [44], p. 181-83. There is nothing to suggest that either General Steel or Anthem[4] expressly aimed their

---

[4] I note that Plaintiffs have not submitted any evidence that any Anthem employee even made disparaging remarks about Olympia or Universal, much less that such remarks could give rise

6

tortious conduct at Pennsylvania. Pennsylvania is not the focal point of the alleged tortious activity and specific jurisdiction cannot be exercised. See Wolk v. Teledyne Industries, Inc., Civ. No. 3-5693, 2007 WL 967170 (E.D. Pa. March 30, 2007) (finding that defendants who published their allegedly defamatory statements in Georgia rather than in Pennsylvania did not expressly aim their conduct at Pennsylvania); Smith v. Holland, Civ. No. 4-2349, 2004 WL 1858041 at * 2 (E.D. Pa. Aug. 18, 2004) (finding the third prong of the Calder test not satisfied and stating that "[a]bsent evidence that the defamatory statement was published to or targeted anyone in Pennsylvania besides Plaintiff, the Court may not exercise personal jurisdiction over Defendants."); and Directory Dividends, Inc. v. SBC Comm., Inc., Civ. No. 1-1974, 2003 WL 22533708 at * 4 (E.D. Pa. Oct. 23, 2003) (declining to exercise personal jurisdiction where "Plaintiff does not contend that any of [the] contracts targeted by Moore involved strictly Pennsylvania accounts. Nor does Plaintiff allege that any false statement was made in Pennsylvania. Under these circumstances we fail to see how Moore 'expressly aimed his tortious conduct' at Pennsylvania.").

B. General Jurisdiction

As stated above, Olympia and Universal also argue that this Court may exercise general jurisdiction over the Defendants. To exercise general jurisdiction over a corporation, the corporation must either: (1) be incorporated or licensed as a foreign corporation in Pennsylvania; (2) consent to jurisdiction in Pennsylvania; or (3) have continuous and systematic business contacts with Pennsylvania. See 42 Pa.

---

to specific jurisdiction.

C.S.A. § 5301(a)(2). Olympia and Universal contend that they can establish general jurisdiction by two means: (1) the alleged consent to jurisdiction; and (2) continuous and systematic contacts with Pennsylvania.

1. <u>Consent to Jurisdiction</u>

Olympia and Universal contend that General Steel has consented to this Court's exercise of jurisdiction because it has participated in litigation on at least six other occasions in the Commonwealth of Pennsylvania. Olympia's and Universal's supposition, for which they do not provide any supporting case law, that participating in a litigation on entirely different claims and with entirely different parties as long as ten years ago constitutes a waiver of a jurisdictional defense in this case is unconvincing. I find General Steel's participation in prior lawsuits an insufficient basis for the conclusion that it has consented to the exercise of general jurisdiction in this case. <u>See</u> <u>Bowers v. NETI Techs., Inc.</u>, 690 F. Supp. 349, 356 (E.D. Pa. 1988) and <u>Simplicity Inc. v. MTS Products, Inc.</u>, Civ. No. 5-3008, 2006 WL 924993 at * 7 (E.D. Pa. April 6, 2006).

2. <u>Continuous and Systematic Business</u>[5]

"Continuous and systematic contacts exist when the non-resident defendant's forum activities are 'extensive and pervasive,' <u>Fields v. Ramada Inn, Inc.</u>, 816 F. Supp. 1033, 1036 (E.D. Pa. 1993), and 'a continuous and central part of a defendant's business,' <u>Endless Pools</u>, 362 F. Supp.2d at 581." <u>Simplicity</u>, 2006 WL 924993 at * 3.

---

[5] As an initial matter, it appears that the inquiry for consideration of contacts within Pennsylvania consists of any contacts on or after January 1, 2003. <u>See</u> Docket No. [50], Ex. 4.

Here, it is undisputed that neither General Steel nor Anthem have a general business presence in Pennsylvania. Neither maintains offices or facilities here, nor do they maintain bank accounts, have telephone listings or mailing addresses. They do not employ any persons in Pennsylvania. Similarly, neither has a registered agent in Pennsylvania. See Docket Nos. [5-2], [5-3].

Both General Steel and Anthem do advertise in Pennsylvania via television and the radio, but those ads are not placed by the Defendants at the local level. Instead, the uncontroverted evidence indicates that, for instance, the Defendants purchase radio ads on nationally syndicated programs or through third party independent brokers who purchase advertising on nationally-aired programs or in local markets throughout the United States. See Docket No. [5-2] and No. [5-3].[6] These national advertisements do not, by themselves, amount to continuous and systematic business with Pennsylvania. See Wellness Publishing v. Barefoot, 128 Fed. Appx. 266, 269 (3d Cir. 2005) and Gehling v. St. George's School of Med., Ltd., 773 F.2d 539 (3d Cir. 1985).

Nor do General Steel's and / or Anthem's web sites constitute continuous and systematic business with Pennsylvania. Olympia and Universal have not offered any evidence of the means by which the web sites work. Affidavits proffered by General Steel and Anthem suggest that the web sites are essentially passive. Customers cannot place orders for products over the internet nor can they obtain quotes over

---

[6]Christopher Furman's affidavit does not contradict this, as he recalled an advertisement on a nationally syndicated program and could not recall during what program he heard another ad.

the internet. Consequently, I do not find the websites constitute a basis for the exercise of general jurisdiction. See McCague v. Trilogy Corp., Civ. No. 6-887, 2007 WL 839921 (E.D. Pa. March 15, 2007).

Nor, after careful consideration, do I find that the sales and contacts documented in the exhibits submitted by Olympia and Universal provide a basis for the exercise of jurisdiction, particularly in light of the complete absence of a business presence in Pennsylvania by the Defendants. For instance, Olympia and Universal provide documentation of five contacts between Anthem and Pennsylvania residents and between General Steel and Pennsylvania residents not connected with actual sales. Plaintiffs ask that this Court then extrapolate from this figure and presume that the Defendants have contacted Pennsylvania residents at least 6,560 times. Personal jurisdiction is a fact intensive inquiry. I will not base the exercise of jurisdiction upon an extrapolation. The Plaintiffs had ample time to engage in discovery on this limited issue.

In terms of contacts from sales, the exhibits reveal that, over the course of 2004, Anthem sold three projects in Pennsylvania. In 2005, Anthem sold four projects in Pennsylvania and in 2006, Anthem sold eight projects in Pennsylvania. See Docket No. [44-8], p. 5.[7] The sales comprised an average of 5.1% of Anthem's total

---

[7] Olympia and Universal dispute the veracity of the list of sales provided by Anthem and General Steel. They have compared and contrasted these lists with information provided by third party fabricators used by both Anthem and General Steel. According to Plaintiff, the Defendants' lists do not account for 43 projects. Anthem and General Steel have filed an affidavit in response to Plaintiffs' allegations, which explain why all but four of those 43 were not included on their sales lists. See Docket No. [50]. Plaintiffs have not taken issue with the Defendants' explanations and I will accept them as accurate for purposes of this Motion. I will, however, consider General Steel to have had four additional sales in 2007 with Pennsylvania, consistent with the affidavit.

sales during this time period. In terms of revenues, Anthem did not recognize any revenue from Pennsylvania sales during 2004; it recognized $1,174,106.40 and $3,140,307.52 in revenue from Pennsylvania sales during 2005 and 2006. The revenue comprised an average of 6.85% of Anthem's total revenue during this period. With respect to General Steel's sales in Pennsylvania, General Steel had 32 sales in 2003, 34 in 2004, 20 in 2005, 17 in 2006, and 4 in 2007. See Docket No. [44], Ex. C. The sales comprised an average of only 2.2% of General Steel's overall sales during this time frame. Id. The average revenue attributed to General Steel's overall sales in Pennsylvania during this time frame constituted only 3.17% of General Steel's overall revenue. Id.

I agree with Olympia and Universal that the Pennsylvania sales made by General Steel and Anthem were central to their businesses. As the court in Provident Nat'l Bank v. California Sav. & Loan Assoc., 819 F.2d 434, 437-38 (3d Cir. 1987) observed, the nature of a defendant's contacts with the forum are more relevant than the absolute amount of dollars or customers in that forum or even the size of the percentage of the total business represented by the forum's residents. Yet, in Provident, while the defendant bank's relative percentage of total business with the forum's residents was small, it was undisputed that the defendant exercised daily control over a bank account during the time period at issue. Provident, 819 F.2d at 436. There is no evidence here that either General Steel or Anthem have engaged in anything close to daily control or contact with Pennsylvania residents during the 2003 through 2007 time frame. Where such daily contacts have been lacking, district

courts in this Circuit have found that a defendant's low relative percentage of business with the forum's residents can be a basis upon which to decline the exercise of jurisdiction. See Modern Mailers, Inc. v. Johnson & Quin, Inc., 844 F. Supp. 1048, 1053-54 (E.D. Pa. 1994); Simplicity Inc. v. MTS Products, Inc., Civ. No. 5-3008, 2006 WL 924993 (E.D. Pa. April 6, 2006); Romann v. Geissenberger Man. Corp., 865 F. Supp. 255 (E.D. Pa. 1994) and Allied Leather Corp. v. Altama Delta Corp., 785 F. Supp. 494 (M.D. Pa. 1992).

Given the corporate Defendants' complete lack of business presence in Pennsylvania, the absence of any advertising directly targeting Pennsylvania residents, the absence of an interactive website directed toward Pennsylvania residents, the absence of any daily or even something approaching daily contact, and the relatively insignificant percentage of business attributable to Pennsylvania residents, I find that the Plaintiffs have not established that General Steel and Anthem had continuous and systematic business contacts with this forum. The contacts which did exist were neither extensive nor pervasive. Consequently, the facts proffered do not support the exercise of general personal jurisdiction over either General Steel (and consequently Knight) or Anthem.

*******************************************

### ORDER OF COURT

AND NOW, this _**24th**_ _ day of April, 2007, after careful consideration, and for

the reasons set forth in the accompanying Opinion, the Motion to Dismiss (Docket No. [5]) is GRANTED based upon lack of personal jurisdiction over the Defendants. This case is CLOSED.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge