IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

OLYMPIA STEEL BUILDINGS SYSTEMS CORP, et  )
al.,                                          )
                                             )
                                             )
              Plaintiffs              )
                                             )
   -vs-                                   )
                                   Civil Action No.  06-1597
                                           )
GENERAL STEEL DOMESTIC SALES, LLC d/b/a  )
GENERAL STEEL CORPORATION, et al.,      )
                                             )
                                             )
              Defendants.          )

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

       Plaintiffs Olympia Steel Buildings Systems Corp. ("Olympia") and Universal Steel Buildings Corp. ("Universal") have filed a Motion for Reconsideration with respect to an Opinion and Order granting Defendants' Motion to Dismiss for lack of personal jurisdiction. See Docket No. [53].  In that Opinion and Order, I concluded that this Court lacked both specific and general jurisdiction over the Defendants.  In seeking reconsideration, Olympia and Universal offer no argument regarding my findings and conclusions as to the lack of specific jurisdiction.  Instead, they contend that I committed various factual and legal errors with respect to my findings and conclusions regarding the existence of general jurisdiction.

1

To prevail on the Motion, Olympia and Universal must convince me that: (1) there has been an intervening change in the law; (2) newly available evidence would alter the outcome of my previous decision; and / or (3) there is a need to correct manifest injustice stemming from a clear error of law or fact.  See Max's Seafood Café by Lou-Ann, Inc. v. Quineros, 176 F.3d 669, 677 (3d Cir. 1999).  Olympia and Universal do not argue an intervening change in the law.  They do, however, proffer new evidence and contend that I made errors of law and fact in my previous Opinion. I will consider each argument.

I. _NEWLY AVAILABLE EVIDENCE_[1]

A. Advertisements

In my Opinion dismissing the case for lack of personal jurisdiction, I found that General Steel's and Anthem's advertising in Pennsylvania did not, by themselves, amount to continuous and systematic contacts.[2]  I based this conclusion upon the

---

[1] I recognize the Defendants' contentions that the evidence submitted in conjunction with the Motion for Reconsideration is not  "newly discovered," because such evidence previously was available to the Plaintiffs.  The affidavits regarding the radio advertisements reflect that they were heard sometime in April.  The Plaintiffs' Brief in Opposition was filed on April 3, 2007.  Consequently, I will presume that the radio advertisements were heard after the submission on the Brief and do constitute newly discovered evidence.  With respect to the remaining affidavit and the exhibits regarding contacts, I will exercise my discretion and accept them for purposes of reconsideration.

[2] I take issue with the Plaintiffs' assertion that I erroneously cited to Wellness Publishing v. Barefoot, 128 Fed. Appx. 266, 269 (3d Cir. 2005) and Gehling v. St. George's School of Med. Ltd., 773 F.2d 539 (3d Cir. 1985), for this proposition of law.  The Third Circuit did in fact comment, in those cases, that national advertisements do not, in and of themselves, provide continuous and systematic contacts. I cited to those cases for a broad proposition of law, not for factually analogous purposes.  While Olympia and Universal now argue that Wellness Publishing is factually on point because the defendant in that case broadcast an infomercial which contained a toll-free phone number intended to generate customer calls, they did not provide this Court with any evidence that General Steel or Anthem engaged in any similar conduct at the time I rendered the earlier decision.

2

fact that Olympia and Universal had proffered evidence which indicated only that General Steel and Anthem placed radio ads on nationally syndicated programs which aired in Pittsburgh, or used third-party independent brokers who purchased advertising on national programs or in local markets.  There simply was no indication that General Steel or Anthem were specifically reaching out and targeting Pennsylvania residents.

Olympia and Universal have *now* proffered evidence that changes my conclusion in this regard.  Specifically, Kevin Colosimo, a partner with Thorp Reed & Armstrong, submitted an affidavit wherein he states that:

> In April, 2007, while in Pittsburgh, I heard at least one advertisement for General Steel Buildings during the Jim and Randy Morning Show on 102.5 FM, WDVE.  The advertisement described the benefits of steel buildings. *A toll-free 800 telephone number was provided.*

See Docket No. [54-4], ¶ 3 (emphasis added). J. Alexander Hershey, an associate at Thorp Reed & Amstrong, also confirms that he heard an advertisement in April of 2007 for General Steel on the Jim and Randy Morning Show on 102.5 FM, WDVE. See Docket No. [54-5], ¶ 4.

Raymond Bahl, a salesman for General Steel during the years of 2003 and 2006, confirms that General Steel used radio advertisements with 1-800 numbers designed to entice potential customers to call General Steel. See Docket No. [54-2], ¶ 2-4. Indeed, he explained that once a customer called the 1-800 number, the call would be transferred to a salesman and a lead file would be created to track the individual. Id.  Bahl then stated that the salesperson would contact the individual numerous

times in order to try to sell a building. Id., ¶ 6.

I find that the inclusion of a toll free number fundamentally changes the character of these advertisements, at least with respect to General Steel. The toll-free number is a direct solicitation of Pennsylvania residents. It represents an active, reaching into of this jurisdiction. As such, it supports the exercise of personal jurisdiction with respect to General Steel.

Newly submitted evidence regarding the manner in which General Steel's website works also supports the exercise of personal jurisdiction over General Steel.

Bahl discussed the manner in which General Steel's website worked. Previously, I held that neither General Steel's nor Anthem's websites constituted continuous and systematic business with Pennsylvania because the affidavits the Defendants had provided indicated that the websites were passive. Customers could not place orders for products over the internet, nor could they obtain quotes over the internet. At the time, Olympia and Universal had submitted nothing to the contrary. They now offer Bahl's affidavit.

Bahl explains that:

> 3. During the years I worked as a salesman for General, there were two types of leads that were used: live leads and Internet leads.
> ...
> 5. Internet leads occurred when a customer would enter his or her contact information into a form via the Internet and that information was then given to a salesman to contact the customer.
>
> 6. As the lead files show, once the initial contact is made by the customer, the salesperson will then contact that potential customer numerous times, in Pennsylvania in

> this case, in order to try to sell a building to them.
>
> 7. Similarly, once a sale is made, the lead is turned over to a project coordinator who engages [in] numerous other contacts with the customer regarding pricing of components such as windows and doors, design and permitting requirements.

See Docket No. [54-4]. As with the toll free telephone numbers, the evidence before me now demonstrates that General Steel's website is designed to solicit residents from every state, including Pennsylvania. The website is not simply passive, as I previously understood it to be. By designing a website which induces customers to enter contact information, which is then in fact followed up by a contact, General Steel is purposefully directing their commercial efforts towards residents in Pennsylvania. Like its advertisements, General Steel's website supports the exercise of personal jurisdiction.

B. Lead Contacts

Olympia and Universal have submitted the affidavit of Beth Duchon, a paralegal with Thorp Reed & Armstrong, who was "tasked with identifying the number of times the Defendant, General Steel, contacted a Pennsylvania resident by telephone, fax, email or mail in one year and the total number of times Defendant Anthem contacted a Pennsylvania resident by telephone, fax, email or mail." See Docket No. [54-3], ¶ 6. Duchon states that she counted approximately 1,066 separate instances of General Steel contacting Pennsylvania in an attempt to make a sale. Id. ¶ 8. She also represents that, excluding sales files, Anthem contacted Pennsylvania on 386 separate occasions. Id., ¶ 9.

5

I have reviewed the documents to which Duchon refers and agree that they represent numerous, continuous and substantial contacts both on behalf of General Steel and Anthem.  They represent contacts in the form of faxes, emails, telephone calls and letters.  They also indicate that the contacts resulted from radio advertisements, television advertisements and the websites.  Further, the documents included an "active dealer list" from General Steel dated September 11, 2006, suggesting that General Steel had seventeen "active dealers" in Pennsylvania.

In short, having reviewed the voluminous documents which Olympia and Universal attach to the Motion for Reconsideration, I conclude that this new evidence supports the conclusion that General Steel's and Anthem's forum activities are extensive and pervasive and a central part of their business.  As such, these contacts support the exercise of personal jurisdiction.

## II. *CLEAR ERROR OF LAW OR FACT*

Olympia and Universal offer several arguments as to why this Court's previous Opinion contained clear errors of law and fact.  First, Olympia and Steel read this Court's previous Opinion as requiring "daily contacts" in order to sustain the exercise of general jurisdiction.  I did not hold that daily contacts were, in fact, required.  Rather, I distinguished the case of Provident Nat'l Bank v. California Sav. & Loan Assoc., 819 F.2d 434 (3d Cir. 1987), wherein the Third Circuit Court found that an exercise of personal jurisdiction was warranted where a bank had no contact with the forum other than daily exercise over a bank account.  I cited to a number of cases within the Third Circuit which had declined to follow the Provident decision

and have instead looked to a defendant's low relative percentage of business with a forum's residents.   I found that General Steel's and Anthem's low relative percentage of business with Pennsylvania's residents, coupled with the lack of evidence suggesting continuous and substantial contacts, compelled me to distinguish this case from <u>Provident</u>.   As stated above, however, Olympia and Universal have now come forward with new evidence indicating that General Steel and Anthem have had continuous and substantial contacts with Pennsylvania residents.

Olympia and Universal also took umbrage with my conclusion that the Defendants' participation in lawsuits should not count as contacts for purposes of general jurisdiction analysis.  First, I note that Olympia and Universal had argued that the Defendants had *consented* to jurisdiction by virtue of previous lawsuits.  <u>See</u> Docket No. [43], p. 10.   One may establish general jurisdiction over a corporation where the corporation: (1) has incorporated or is licensed as a foreign corporation in Pennsylvania; (2) *has consented to jurisdiction in Pennsylvania*; or (3) has continuous and systematic business contacts with Pennsylvania. <u>See</u> 42 Pa. C.S.A. § 5301(a)(2) (emphasis added).   Thus, the issue of consent is separate from an analysis of continuous and systematic business contacts.  Further, as I noted in my previous Opinion, Olympia and Universal had not submitted any case law supporting their novel theory that participating in a litigation on *entirely different claims* and with *entirely different parties* as long as ten years ago constitutes a waiver of a jurisdictional defense. <u>See</u> Opinion, Docket No. [51].  Indeed, my research confirmed

7

that general jurisdiction would not arise in this instance. Id., citing, Bowers v. NETI Techs, Inc., 690 F. Supp. 349, 356 (E.D. Pa. 1988) and Simplicity Inc. v. MTS Products, Inc., Civ. No. 5-3008, 2006 WL 924993 at * 7 (E.D. Pa. April 6, 2006).[3]  Consequently, I stand by my earlier decision with respect to the issue of consent and prior litigation.

Finally, Olympia and Universal contend that I "overlooked" the nature of General Steel's and Anthem's sales to Pennsylvania residents which necessitated multiple contacts.  I need not delve into this argument, as I have already concluded, as set forth above, that the new evidence proffered demonstrates substantial and continuous contacts.

III. CONCLUSION ON MOTION FOR RECONSIDERATION

Based upon the newly submitted evidence, and the reconsideration of previously submitted evidence in light of that new evidence (i.e., the relative percentage of the Defendants' business with Pennsylvania residents), I find that Olympia and Universal have sustained their burden of demonstrating that General Steel and Anthem have extensive, pervasive, continuous and systematic contacts with Pennsylvania.  Olympia and Universal have convinced me that those contacts were deliberate and purposeful rather than merely fortuitous. Further, those contacts are a central part to General Steel's and Anthem's business.  Consequently,

---

[3] I find Olympia's and Universal's citation to Welsh v. Meistermatic, Inc., Civ. No. 4-1385, 2006 WL 1308041 at * 4 (W.D. Pa. May 10, 2006) to be unconvincing.  In Welsh, my colleague found that a defendant "consented to Pennsylvania jurisdiction when it did not challenge PHRC jurisdiction over [the plaintiff's] discrimination complaint filed with it and the EEOC."  Thus, the court found that Pennsylvania had already exercised jurisdiction over the defendant with respect to the very matters before the court.  This is easily distinguishable from the case before me.  Olympia and Universal cannot show me that General Steel and Anthem consented to jurisdiction in an administrative proceeding in Pennsylvania regarding the very matters at issue here.

the exercise of general jurisdiction over these Defendants would not offend traditional notions of fair play and substantial justice.

Having so determined, however, I must consider several other arguments which the Defendants raised in their initial Motion (Docket No. [5]), which I declined to address because I found jurisdiction lacking. Specifically, I must address the issue of personal jurisdiction over Defendant Jeffrey Knight, the issue of improper venue, and the issue of transfer. I will address those issues *seriatim*.

IV. <u>*JEFFREY KNIGHT - PERSONAL JURISDICTION*</u>

Knight challenges this Court's exercise of personal jurisdiction over him. He is a resident of Colorado, does not own or lease property in Pennsylvania, does not have a bank account in Pennsylvania and does not have a telephone listing in Pennsylvania. Further, he has never filed a Pennsylvania tax return nor is he registered to vote in Pennsylvania. <u>See</u> Docket No. [62-4]. I agree with Knight that these facts do not support the exercise of personal jurisdiction over him.

Olympia and Universal do not dispute this conclusion. Instead, they insist that Knight's status as the "alter ego" of General Steel constitutes a sufficient basis upon which to exercise personal jurisdiction over Knight. The Complaint is replete with allegations that Knight functions as the alter ego for General Steel and Anthem - i.e., that he operates the entities as a single business enterprise, that he commingles the funds, that he diverts the assets to his personal use, and that he fails to observe corporate formalities. <u>See</u> Complaint, ¶¶ 70-85. Olympia and Universal insist that I must accept these allegations as true for purposes of a Motion to Dismiss. Accepting

these allegations as true, and having established that General Steel and Anthem are subject to personal jurisdiction in this forum, Olympia and Universal reason, Knight must be as well.

I disagree.  I granted Olympia and Universal an extended period of discovery for purposes of establishing jurisdiction.  Given this advantage, resting upon mere allegations in a Complaint is insufficient.  See North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990) (stating that "[t]he plaintiff may not rely on the pleadings to satisfy his burden but must establish a basis for personal jurisdiction through sworn affidavits or other competent evidence.") and Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir. 1984) (noting that once a Rule 12(b)(2) motion is made, the "plaintiff must respond with actual proofs, not mere allegations").  The fact that this case involves jurisdiction over "alter egos" does not somehow excuse Olympia and Universal from satisfying this burden.  See Componentone, LLC v. Componentart, Inc., 2007 WL 776930 at * 5 (W.D. Pa. March 12, 2007) (stating that, once a defendant raises a defense of lack of personal jurisdiction, a plaintiff seeking to establish jurisdiction by way of the alter ego doctrine, "'may not rely upon the conclusory averments of the pleadings, but must come forward with competent evidence that establishes the court's jurisdiction.'") (quoting, Patterson by Patterson v. F.B.I., 893 F.2d 595, 604 (3d Cir.), cert denied, 498 U.S. 812 (1990); Smith v. S&S Dundalk Engineering Works Ltd., 139 F. Supp.2d 610, 618 (D. N.J. 2001) (stating, in the context of a plaintiff's attempt to establish personal jurisdiction over a defendant based upon contacts the defendant's subsidiaries had with the

forum, that "the plaintiff must sustain its burden of proof 'through sworn affidavits or other competent evidence, and not through bare pleadings alone.") (citations omitted); Heritage Copy Products, Inc. v. Savin Corp., 661 F. Supp. 463 (M.D.. Pa. 1987) (confirming, where a party sought to base the exercise of personal jurisdiction on the alter ego theory, that "[w]hereas a court must accept as true the allegations of the non-moving party when considering a Rule 12(b)(6) motion, the disposition of a Rule 12(b)(2) motion '... requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies.' ... Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. ... [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personal jurisdiction.") (quoting, Time Share, 735 F.2d at 66).

Despite their clear burden, Olympia and Universal have not submitted any evidence, in the form of sworn affidavits or otherwise, relevant to whether Knight acted as the alter ego of General Steel.  In contrast, Knight has submitted an affidavit indicating that he does not own or lease property in Pennsylvania; that he does not have a bank account in Pennsylvania; that he does not have a telephone listing or an office in Pennsylvania; that he has never filed a Pennsylvania tax return and that he is not registered to vote in Pennsylvania. See Docket No. [62-4].  Knight explains that Nathan Wright is the managing member of Anthem and owns 100% of its outstanding common stock. See Docket No. [62-5].  He also states that General

Steel has filed its annual reports with the State of Colorado during all times relevant to this action; that Anthem is duly incorporated under the laws of the State of Delaware and that it has filed its annual reports during all times relevant to this action. Id. General Steel maintains corporate records and holds regular corporate meetings separate and apart from those maintained and held by Anthem. Id. General Steel employs approximately 140 individuals while Anthem employs approximately 12. Id. General Steel and Anthem have separate tax identification numbers and file separate tax returns. Id. They maintain separate bank accounts and occupy separate office facilities. Id. General Steel and Anthem do not commingle company funds, nor, Knight represents, does he commingle his personal funds with those of General Steel. Id. While he may use General Steel funds for petty transactions, he reimburses the company. Id.

Thus, Olympia and Universal have not discharged their burden of demonstrating that Knight is subject to in personam jurisdiction in this forum, based upon either his own contacts or based upon the alter ego doctrine. Consequently, the Motion to Dismiss the claims against Jeffrey Knight is granted.

*V. VENUE*[4]

General Steel and Anthem also seek dismissal of the action based upon improper venue. Venue is governed by 28 U.S.C. § 1331. Where jurisdiction is

---

[4] The Defendants raised the issues of dismissal or transfer for improper venue and inconvenient forum *as alternatives* to dismissal for lack of personal jurisdiction. I have found personal jurisdiction wanting with respect to Jeffrey Knight and the Motion to Dismiss is granted in this regard. Because the Motion to Dismiss is denied with respect to General Steel and Anthem on jurisdictional grounds, I will proceed to consider the alternative arguments with respect to them.

founded solely upon diversity of citizenship, an action may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  Where jurisdiction is not founded solely upon diversity of citizenship, an action may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

In responding to General Steel's and Anthem's venue challenge, Olympia and Universal do not explain whether they seek refuge under § 1391(a) or § 1391(b).[5] They argue that "[b]ecause this Court has jurisdiction over the Defendants, this District is a proper venue for this action because General and Anthem are 'deemed

---

[5]General Steel and Anthem removed the action from the Court of Common Pleas of Allegheny County, Pennsylvania by referencing the existence of both federal question jurisdiction and diversity of citizenship.

to reside in any judicial district in which [they are] subject to personal jurisdiction...."
See Docket No. [43], p. 19, citing 28 U.S.C. § 1391(c) (brackets in original).  Section
1391(c) provides that:

> For purposes of venue under this chapter, a defendant
> that is a corporation shall be deemed to reside in any
> judicial district in which it is subject to personal
> jurisdiction at the time the action is commenced. ...

28 U.S.C. § 1391(c).[6] The reference to residence suggests that Olympia and Universal
seek to establish venue pursuant to either § 1391(a)(1) or § 1391(b)(1).

I agree that venue is proper under either § 1391(a)(1) or § 1391(b)(1).  The
Defendants' contention that venue is improper under these provisions because not
all Defendants reside within this State is unconvincing.  Their argument rests upon
the contention that Jeffrey Knight is not a resident of Pennsylvania.  However, as
set forth above, Jeffrey Knight has been dismissed from this action based upon the
absence of personal jurisdiction.  As to the remaining Defendants, General Steel and
Anthem, all do "reside" in Pennsylvania and venue is proper.  The Motion to Dismiss
under Rule 12(b)(3) and 28 U.S.C. § 1406(a) for  improper venue is, therefore, denied.

---

[6] Section 1391(c) continues on to provide that "[i]n a State which has more than one judicial
district and in which a defendant that is a corporation is subject to personal jurisdiction at the time
an action is commenced, such corporation shall be deemed to reside in any district in that State
within which its contacts would be sufficient to subject it to personal jurisdiction if that district
were a separate State, and, if there is no such district, the corporation shall be deemed to reside in
the district within which it has the most significant contacts." 28 U.S.C. section 1391(c).  Having
reviewed the documents submitted in conjunction with the original Brief in Opposition to Motion
to Dismiss and those submitted in conjunction with the Motion for Reconsideration, I am confident
that both General Steel and Anthem have extensive and pervasive contacts with the residents of
the Western District of Pennsylvania so as to establish that they engaged in systematic and
continuous business and are subject to personal jurisdiction within this District.

VI. *DISMISSAL OR TRANSFER BASED UPON INCONVENIENCE*

      Citing to the doctrine of *forum non conveniens*, General Steel and Anthem next argue that dismissal is appropriate here because an adequate alternative forum is available and that forum is more convenient for the parties, the witnesses, and the court. See Docket No. [6], p. 14.  "In federal courts, the common law doctrine of *forum non conveniens* now serves a limited purpose, and is generally employed by a District Court to dismiss a case when the more convenient forum is in a foreign country." Allegheny Technologies, Inc. v. Strecker, Civ. No. 6-666, 2007 WL 852547 at * 13 (W.D. Pa. March 16, 2007), citing, Toll Bros., Inc. v. Nationwide Property & Casualty Ins. Co., 2005 WL 2600207 at * 2 n. 1 (E.D. Pa. Oct. 13, 2005) (noting that "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad.").  There is no suggestion here that the more convenient forum is a foreign country.  To the contrary, General Steel and Anthem argue that this case should be transferred to the United States District Court in Colorado.  Accordingly, because the doctrine is inapplicable in this context, the Motion to Dismiss is denied in this respect.

      Finally, General Steel and Anthem urge that, as an alternative to dismissal, this action should be transferred to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The Third Circuit Court has provided an extensive list

of factors to consider in assessing whether the convenience of the parties and witnesses and the interests of justice would be furthered by a transfer:

> (1) the plaintiff's choice of forum;
> (2) the defendant's choice of forum;
> (3) where the claim arose;
> (4) "convenience of the parties as indicated by their relative physical and financial conditions";
> (5) "the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora";
> (6) the location of books and records;
> (7) the enforceablility of the judgment;
> (8) practical considerations that could expedite or simplify trial;
> (9) the level of court congestion in the two fora;
> (10) "the local interest in deciding local controversies at home";
> (11) the public policies of the fora; and
> (12) in a diversity case, the familiarity of the two courts with state law.

In re Amendt, 169 Fed. Appx. 93, 96 (3d Cir. 2006), citing, Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).  "The burden of showing a need for transfer is on the movant" - in this case - General Steel and Anthem. Id.

They have not discharged this burden.  While I agree that the action could have been brought in Colorado because the Defendants reside in Colorado, and that Olympia's and Universal's choice of forum should be given less deference because none of the conduct complained of occurred in the selected forum, see Pennsylvania Machine Works, Inc. v. North Coast Remanufacturing Corp., Civ. No. 4-

1731, 2004 WL 2600117 at * 6 (E.D. Pa. Nov. 16, 2004),[7] I find that the balance of factors do not favor transfer.  Certainly General Steel and Anthem would find it more convenient to litigate this case in Colorado.  Yet this would simply shift the balance of inconvenience to Olympia and Universal.  A "court should not grant a transfer simply because the transferee court is more convenient for the defendants and therefore if the transfer would merely switch the inconvenience from defendant to plaintiff, the transfer should not be allowed." Dinterman v. Nationwide Mut. Ins. Co., 26 F. Supp.2d 747, 749-50 (E.D. Pa. 1998).  Further, these parties are competitors and appear to be relatively equal in terms of financial strength.  As such, this factor is neutral in its balancing.

General Steel and Anthem speak of the convenience of witnesses and the inability to compel witnesses to attend a trial if held in Pennsylvania.  They insist that their employees are all located in Colorado. See Docket No. [6], p. 19.  However, "the convenience of witness[es] that are employees of a party carries no weight because the parties are obligated to procure their attendance at trial." Pennsylvania Machine Works, 2004 WL 2600117 at * 6 n. 4, quoting, Mentor Graphic Corp. v. Quickturn Design Sys., Inc., 77 F. Supp.2d 505, 510 (D. Del. 1999). As to the expense associated with transporting these employees to Pennsylvania for trial testimony, General Steel and Anthem have not argued that such testimony could not be

---

[7] I base this conclusion upon my holding (which was not challenged in the Motion for Reconsideration), that specific jurisdiction over the Defendants did not exist in this case.  While Olympia and Universal may have felt "harm" in Pennsylvania because of the alleged defamatory remarks, they did not come forward with any evidence that the remarks were made in or to Pennsylvania residents.

effectively presented via videotaped trial depositions. Id., citing, ICT of N. Am., Inc. v. Team Air Express, No. 00-3959, 2000 U.S. Dist. LEXIS 16420 at * 4 (E.D. Pa. Nov. 2, 2000) ("The cost of obtaining attendance of willing witnesses is … not persuasive given the ability to take videotaped trial depositions.").  To the extent that General Steel and Anthem speak of third party witnesses, they have not identified who these individuals are, how their testimony is relevant, and whether these individuals would in fact be unwilling to testify. Id.,* 6 (stating, in partial support of a denial of a motion to transfer, that the Defendant "fails to cite evidence showing that the witnesses would refuse to testify in their neighboring state."). See also Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756-57 (3d Cir. 1973) (granting mandamus to compel a district court to vacate an order transferring a case to another district, commenting that "there was no evidence before the district court upon which it could base a finding that a transfer order was justified," and that the defendants failed to "support their motion to transfer with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer.")[8]  Consequently, this factor is neutral in its balancing.

Finally, the Defendants argue that Colorado would be a more convenient forum because their books and records are located there.  While this may be true,

---

[8] The Third Circuit court gave as examples of such facts: "names and addresses of witnesses whom the moving party plans to call, … affidavits showing the materiality of the matter to which these witnesses will testify, statements by the moving part[y] of the business difficulties or personal hardships that might result from … having to defend against the suit in the district court where it was originally brought, affidavits concerning the relative ease of access to sources of documentary evidence, and other materials where appropriate." Plum Tree, 488 F.2d at 757 n. 2.

"'the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis.'" <u>See</u> <u>Lomanno v. Black</u>, 285 F. Supp.2d 637, 647 (E.D. Pa. 2003), <u>quoting</u>, <u>Am. High-Income Trust v. AlliedSignal, Inc.</u>, Civ. No. 00-690 GMS, 2002 WL 373473 at * 5 (D. Del. March 7, 2002) (citations omitted). However, there has been no indication from General Steel and Anthem that these books and records could not be produced in Pennsylvania. <u>See</u> <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995). As such, this factor is neutral in its balancing.

The Defendants also argue that the public interests factors weigh in favor of a transfer.   There are practical considerations regarding the enforceability of a judgment, the relative court congestion in the two fora, the local interest in deciding local controversies at home, the public policies of the two fora and the familiarity of the two courts with the governing law.  Yet the Defendants have not proffered any evidence regarding court congestion, nor have they argued that Colorado law would govern.  To the extent that there is an interest in deciding local controversies at home, I do agree with the Defendants that it appears that none of the conduct complained of occurred in Pennsylvania at this procedural juncture, but certainly Pennsylvania has an interest in protecting the reputation of its businesses from defamatory and slanderous remarks.  Again, then, these factors appear neutral in their balancing.

Simply stated, the Defendants have not presented evidence tipping the balance of factors in favor of a transfer. They have not submitted affidavits or depositions identifying the names and addresses of non-party witnesses whom they

plan to call and the materiality of the matter to which the witnesses would testify, nor have they explained satisfactorily by way of affidavit or deposition any business hardships which might result from having to defend this litigation in this jurisdiction.  See Young v. Tri-Corp. Amusements, Civ. No. 93-4445, 1994 WL 27309 at * 4 (stating that "to show that the cost and convenience of witnesses weigh in favor of transferring an action, as defendants attempt to do here, a moving party would have to submit documents such as lists of names and addresses of witnesses whom it plans to call and affidavits showing the materiality of the matter to which these witnesses would testify, or statements by the moving party of the business difficulties or personal hardships that might result from its having to defend against the suit in the district court where the action was originally brought.") (citations omitted).  Nor have they convincingly argued that the public factors weigh in favor of a transfer.   Other than the convenience to the Defendants, which is counterbalanced by the convenience to the Plaintiffs, nothing weighs in favor of a transfer.  As such, the Motion for Transfer Pursuant to 28 U.S.C. § 1404(a) is denied.

* * * * * * * * * * * * * * * * * * * * *

ORDER OF COURT

AND NOW, this **22nd** day of June, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that  the Motion for Reconsideration (Docket No. [53]) is GRANTED, insofar as this Court will exercise

personal jurisdiction over Defendants General Steel and Anthem Steel.  It is DENIED insofar as this Court declines to exercise personal jurisdiction over Defendant Jeffrey Knight.

It is further ORDERED that the Defendants' Motion to Dismiss Or, In The Alternative, To Transfer Venue (Docket No. [5] is GRANTED insofar as this Court declines to exercise personal jurisdiction over Jeffrey Knight, and is DENIED in all other respects.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge